IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **CHARLES KING, III,** | ] |
| Movant, | ] |
| v. | ] Case No.: 2:24-cv-8005-ACA |
| **UNITED STATES OF AMERICA,** | ] |
| Respondent. | ] |

## MEMORANDUM OPINION

A jury convicted Movant Charles King, III of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). *United States v. King*, No. 18-317, doc. 90 (N.D. Ala. July 1, 2020).[1] Mr. King now moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, contending that trial counsel provided ineffective assistance by: (1) failing to argue that Mr. King's Fourth Amendment waiver did not extend to suspicionless searches of his car ("Claim One"); (2) failing to object when the prosecution bolstered a witness's testimony ("Claim Two"); (3) failing to object to the exclusion of impeachment evidence ("Claim Three"); and (4) failing to introduce evidence that another person claimed ownership of the gun ("Claim Four"). (Doc. 1 at 4–5; doc. 2 at 3–19). Because Mr. King cannot establish

---

[1] The court cites documents from Mr. King's criminal proceeding as "*King* doc. __."

that his attorney provided ineffective assistance, the court **WILL DENY** the § 2255 motion. The court also **WILL DENY** a certificate of appealability.

I.   FACTS

In January 2018, Mr. King was serving concurrent terms of probation and parole in Alabama relating to four Georgia criminal cases. (*King* doc. 30 at 4–5). Mr. King's parole certificate agreed that his supervision officer could "at any time, conduct a warrantless search of [his] person, papers, and place of residence, automobile, or any other property under [his] control." (*King* doc. 24-5 at 2). His judgment in the cases for which Mr. King was released on probation provided that he would "submit to a search of [his] person, property, residence, or vehicle at any time of the day or night, with or without consent or a search warrant, whenever requested to do so by a Probation Officer or any other peace officer." (*King* doc. 24-4 at 1, 3; *see also King* doc. 24-3 at 1–2). The court refers to these statements in Mr. King's parole certificate and judgment as Mr. King's "Fourth Amendment waiver."

Mr. King's probation officer was Ashley Bailey. (*King* doc. 112 at 98, 100; *see King* doc. 30 at 4–5). After Officer Bailey received an anonymous tip that Mr. King had firearms and drugs in his possession, she asked Rashaun Robinson, a probation and parole officer who was also a task force officer for the Bureau of Alcohol, Tobacco and Firearms, to assist with a search. (*King* doc. 112 at 102–05,

2

116). The government conceded that Officer Bailey had no information by which to judge the tipster's credibility or reliability. (*King* doc. 24 at 7).

While Mr. King was undergoing a drug test, Officer Robinson and Special Agent Earl Witt went to search the car in which Mr. King had arrived. (*King* doc. 112 at 119, 121–22, 125, 139, 142). The car was registered to Mr. King's father (*id.* at 132), and occupied by a woman named Sara Richard[2] (*id.* at 125, 142–43, 150). Officer Robinson and Agent Witt found two guns in the car, one in the glove box and one in Ms. Richard's purse. (*Id.* at 126–27, 130–31, 143–44).

While Mr. King was in jail, he participated in a phone call with his father and Ms. Richard. (*King* doc. 112 at 206). During the phone call, Mr. King's father asked Mr. King if "that's all the firepower you had with you," to which Mr. King responded, "Did they take both of them from her?" (Exh. 8 at 4:05–4:15; *see* doc. 16). After an interruption, he repeated the question and his father replied, "Yeah." (*Id.* at 4:22–4:25).

II. **PROCEDURAL HISTORY**

A grand jury indicted Mr. King on one count of being a felon in possession of two firearms, in violation of 18 U.S.C. § 922(g)(1). (*King* doc. 1). Mr. King moved to suppress the guns seized from the car on the ground that the officers lacked

---

[2] The spelling of Ms. Richard's name varies between "Richard" and "Richards." The court uses the spelling from her driver's license. (*See King* doc. 112 at 149–50).

3

reasonable suspicion to support a search. (*King* doc. 19). The government conceded that officers lacked reasonable suspicion to search the car but argued that under the Supreme Court's decision in *Samson v. California*, 547 U.S. 843 (2006), Mr. King's status as a parolee meant the officers could search the car without reasonable suspicion. (*King* doc. 24 at 7–8). A magistrate judge entered a report recommending that the court deny the motion to suppress because under *Samson*, Mr. King's consent to warrantless searches of his car by probation and parole officers meant he had no reasonable expectation of privacy in the car. (*King* doc. 26 at 6). Mr. King objected on several grounds, including that *Samson* was distinguishable because Mr. King's parole and probation documents created confusion about whether officers needed reasonable suspicion for a search. (*King* doc. 27 at 2–3). The district court overruled Mr. King's objection, adopted the report, accepted the recommendation, and denied the motion to suppress evidence. (*King* doc. 28).

Before trial, the government moved for *in camera* review of a reprimand Officer Robinson received in 2005, arguing that it should not have to disclose the details of the reprimand to Mr. King. (*King* doc. 44) (sealed). The court granted the government's motion and found that disclosure of Officer Robinson's reprimand was not necessary because the reprimand had occurred fourteen years earlier and arose from a single incident unrelated to the issues in Mr. King's case, so it did not give rise to "a strong basis to impeach." (*King* doc. 112 at 23). But even if the

4

evidence was impeaching, its exclusion was not prejudicial because Officer Robinson was not the only person who had found the guns during the search. (*Id.*).

For his part, Mr. King moved to exclude any out of court statements by Ms. Richard as hearsay and lacking foundation. (*King* doc. 33 at 1–2). This motion related to statements Ms. Richard made to Officer Robinson and Agent Witt after they discovered the guns. (Interview Recording at 2:15–2:20; *see* doc. 15). Ms. Richard claimed that the guns in the car were hers, though she did not know what kind they were or what type of ammunition they used. (*Id.* at 2:32–3:30). She told the officers that she purchased them from "someone off the street" named Jerry and that she did not know if they were stolen. (*Id.* at 4:48–4:52, 6:39–7:10). She admitted that Mr. King was aware of both guns. (*Id.* at 5:50–5:57). After Agent Witt checked the status of the guns, he informed Ms. Richard that one of them had been stolen. (Interview Recording at 23:19–23:30). She maintained that she had purchased the guns from someone in Atlanta. (*Id.* at 25:15–26:20). When trial began and the government had been unable to locate Ms. Richard, the court granted Mr. King's motion to exclude her testimony. (*King* doc. 112 at 4).

The jury ultimately found Mr. King guilty. (*King* doc. 55). The court sentenced Mr. King to 211 months' imprisonment. (*King* doc. 90 at 2).

### III. DISCUSSION

Mr. King asserts that trial counsel provided ineffective assistance in four ways. (*See* doc. 1 at 4–5; *see generally* doc. 2). To prevail on a claim of ineffective assistance of counsel, Mr. King must demonstrate both that (1) his counsel's performance fell below an objective standard of reasonableness and (2) he suffered prejudice because of that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687–91 (1984). To establish deficient performance, he "must show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Griffith v. United States*, 871 F.3d 1321, 1329 (11th Cir. 2017) (quotation marks omitted). To establish prejudice, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

#### 1. Claim One

In Claim One, Mr. King contends that trial counsel's representation during the suppression proceedings was ineffective. (Doc. 1 at 4–5; doc. 2 at 3–9). Specifically, he argues that counsel should have argued that his Fourth Amendment waiver was distinguishable from the waiver in *Samson* because the *Samson* parolee's waiver explicitly covered warrantless and suspicionless searches whereas Mr. King's waiver covered only warrantless searches. (Doc. 2 at 3–9).

6

To establish deficient performance, Mr. King must show that "no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). And although "counsel's ignorance of a well-defined legal principle could be inexcusable and demonstrate ineffective performance by counsel," counsel's failure to raise an unsettled legal question cannot establish deficient performance. *Black v. United States*, 373 F.3d 1140, 1144 (11th Cir. 2004); *see also Smith v. Singletary*, 170 F.3d 1051, 1054 (11th Cir. 1999) ("[T]he rule that an attorney is not liable for an error of judgment on an unsettled proposition of law is universally recognized.") (quotation marks and alteration omitted).

The Supreme Court has held that a suspicionless search of a parolee does not violate the Fourth Amendment where the parolee agreed in writing to be subject to search "with or without cause." *Samson*, 547 U.S. at 846. Parolees, who already have a "severely diminished" expectation of privacy, have even less expectation of privacy when a condition of release is their agreement to submit to suspicionless searches. *Id.* at 850–52. And States have an "overwhelming interest" in supervising parolees, reducing recidivism, and promoting reintegration and positive citizenship, "warrant[ing] privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." *Id.* at 853.

Here, the magistrate judge's report and recommendation, relying on *Samson*, concluded that because Mr. King had agreed to submit to warrantless searches, he lacked a reasonable expectation of privacy. (*King* doc. 26 at 6). Mr. King argues that his attorney should have argued that *Samson* does not apply to him because, although he was a parolee at the time of the search, his Fourth Amendment waiver covered only warrantless searches and did not extend to suspicionless searches. (Doc. 2 at 5). In support, he relies on a district court opinion that drew the same distinction to find that a Georgia parolee's Fourth Amendment waiver did not extend to a suspicionless search. (*Id.* at 6) (citing *United States v. Williams*, 409 F. Supp. 3d 1340, 1347–48 (M.D. Ga. 2019)).

Regardless of the persuasiveness of the district court's opinion in *Williams*, that opinion cannot establish that Mr. King's counsel performed deficiently. First, this court had already denied Mr. King's suppression motion by the time the *Williams* court issued its decision. (*See* doc. 28) (issued on January 8, 2019); *Williams*, 409 F. Supp. 3d at 1340 (issued on August 19, 2019). Second, the question Mr. King asserts counsel should have raised is unsettled. Even if *Williams* had been issued before this court decided Mr. King's suppression motion, a district court opinion cannot create settled law in the Eleventh Circuit. *Freeman v. Comm'r, Ala. Dep't of Corr.*, 46 F.4th 1193, 1203 (11th Cir. 2022). And an unpublished decision from the Eleventh Circuit rejected a Georgia parolee's argument that "although his

parole conditions authorized warrantless searches, the Fourth Amendment requires an officer to have reasonable suspicion of criminal activity in order to search a parolee." *United States v. Stewart*, 213 F. App'x 898, 899 (11th Cir. 2007).

Neither *Williams* nor *Stewart* are binding precedent in the Eleventh Circuit. *See United States v. Morris*, 131 F.4th 1288, 1293 n.3 (11th Cir. 2025) (explaining that unpublished decisions are "not binding precedent"). But their existence highlights the fact that the question Mr. King now asserts counsel should have raised is unsettled. And counsel's failure to raise an unsettled legal question cannot be deficient. *Black*, 373 F.3d at 1144; *see also Smith*, 170 F.3d at 1054. Absent deficient performance, Mr. King's claim of ineffective assistance fails. The court therefore **WILL DENY** Claim One.

    2.    Claim Two

In Claim Two, Mr. King contends that trial counsel provided ineffective assistance by failing to object when the government bolstered Officer Robinson's testimony. (Doc. 1 at 5; doc. 2 at 11–13).

Mr. King's cross-examination of Officer Robinson sought to weaken the evidence that Mr. King possessed the guns by highlighting the fact that one was found in Ms. Richard's purse and neither had any fingerprints linking them to Mr. King. (*See King* doc. 112 at 133–38). On redirect examination, the government asked:

9

> Q: Officer Robinson, apart from fingerprinting a gun, did you feel as the case agent that you had other evidence that indicated knowledge and possession of that weapon?
>
> A: That is correct, sir.

(*Id.* at 138). The government did not ask what other evidence Officer Robinson meant. (*See id.*). Mr. King argues that this was improper bolstering. (Doc. 1 at 5; doc. 2 at 11–13).

"Improper bolstering occurs when the government places its prestige behind the witness, or when the government suggests that information not presented to the jury actually supports the witness's credibility." *United States v. Reeves*, 742 F.3d 487, 502 (11th Cir. 2014). This question and answer did not amount to bolstering because the government presented the "other evidence" to which Officer Robinson referred. Specifically, Officer Robinson and Agent Witt found the guns in a car in which Mr. King had arrived, and during a recorded jail call, Mr. King's father asked if that was "all the firepower [Mr. King] had with [him]," to which Mr. King responded by twice asking if "they [took] both of them." (Exh. 8 at 4:05–4:25).

Even if the government's questioning amounted to bolstering, Mr. King cannot prevail on his ineffective-assistance claim unless he shows that counsel's failure to object was deficient and that the failure to object prejudiced the trial. *See Strickland*, 466 U.S. at 687–91. To show deficient performance, Mr. King must overcome the presumption that "counsel's conduct falls within the wide range of

reasonable professional assistance; that is, [he] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (quotation marks omitted).

Here, although counsel did not object, it is readily apparent that a reasonable attorney could have chosen not to object because a successful objection might have prompted the government to elicit more evidence of Mr. King's guilt. *See Chandler*, 218 F.3d at 1315 n.16 (holding that the court "look[s] at the acts or omissions of counsel that the petitioner alleges are unreasonable and ask[s] whether some reasonable lawyer could have conducted the trial in that manner"). Finally, even if counsel were deficient for failing to object, Mr. King cannot show a reasonable possibility that a successful objection would have changed the outcome of the trial. *See Strickland*, 466 U.S. at 694. In addition to the evidence that officers found the guns in the car in which Mr. King arrived for his drug test, the prison recording of Mr. King showed that he was aware two guns were in the car. (Exh. 8 at 4:05–4:25). Accordingly, the court **WILL DENY** Claim Two.

   3. <u>Claim Three</u>

In Claim Three, Mr. King contends that trial counsel provided ineffective assistance by failing to object to the district court's decision to exclude evidence of a past reprimand against Officer Robinson. (Doc. 1 at 5; doc. 2 at 13–15).

11

Mr. King cannot show that counsel was deficient for failing to object. The trial court reviewed the reprimand *in camera* and found that the government did not need to disclose the evidence to the defense because the conduct at issue had occurred many years before and was unrelated to Mr. King's case, and even if it could be used to impeach Officer Robinson, Agent Witt had also been involved in the search. (*King* doc. 112 at 23, 119, 121–22, 125, 139, 142). Had counsel objected, the court would have overruled that objection. (*See id.* at 23). And "[f]ailing to make a meritless objection does not constitute deficient performance." *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015).

Even if counsel had objected and the court had sustained that objection, disclosing the information would have no reasonable possibility of changing the outcome of the trial. The court has reviewed the reprimand and agrees with the trial judge's evaluation: the reprimand was fourteen years old by the time of Mr. King's trial and it did not involve any conduct that would impeach Officer Robinson. (*See King* doc. 44-1) (sealed). Trial counsel would have been unlikely to use the reprimand to attempt to impeach Officer Robinson, and if he had used the reprimand, there is no "reasonable probability" that the jury would have discounted Officer Robinson's credibility based on it. *See Strickland*, 466 U.S. at 694. Finally, even if the jury had discounted Officer Robinson's credibility, Agent Witt searched the car

at the same time and also found a gun. (*King* doc. 112 at 143–44). Accordingly, the court **WILL DENY** Claim Three.

### 4. Claim Four

In Claim Four, Mr. King contends that trial counsel provided ineffective assistance by failing to present the recording of Ms. Richard claiming that the guns belonged to her. (Doc. 1 at 5; doc. 2 at 15–19; doc. 19 at 1–4).

As an initial matter, the recording of Ms. Richard is hearsay. *See* Fed. R. Evid. 801(c) (defining "hearsay" as "a statement that . . . the declarant does not make while testifying at the current trial or hearing[] and . . . a party offers in evidence to prove the truth of the matter asserted in the statement"). And Federal Rule of Evidence 802 prohibits the admission of hearsay unless a federal statute or rule provides otherwise.

Mr. King contends that, despite being hearsay, Ms. Richard's statement could be admitted as a statement against interest under Federal Rule of Evidence 804(b)(3)(B). (Doc. 2 at 18–19). The court need not determine whether Ms. Richard's recorded statement was admissible as a statement against interest because, even if it was, counsel did not perform deficiently by failing to seek its admission. Ms. Richard's statement that she owned the guns would not have assisted Mr. King's defense because a defendant can possess firearms owned by someone else. *See United States v. Perez*, 661 F.3d 568, 576 (11th Cir. 2011) ("Possession of

a firearm may be either actual or constructive. Constructive possession of a firearm exists when a defendant does not have actual possession but instead knowingly has the power or right, and intention to exercise dominion and control over the firearm.") (citation omitted).

Moreover, Ms. Richard told Officer Robinson and Agent Witt that, although the guns belonged to her, Mr. King was aware of their presence in the car. (Interview Recording at 5:50–5:57). The statement that Mr. King knew the guns were in the car would have assisted the government in proving that Mr. King "was aware or knew of the firearm's presence"—one of the elements of constructive possession. *See Perez*, 661 F.3d at 576. A reasonable attorney could have decided that excluding her statement was more beneficial than admitting it. *See Chandler*, 218 F.3d at 1315 ("[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take."). Accordingly, Mr. King cannot show that counsel provided ineffective assistance and the court **WILL DENY** Claim Four.

     5.    Certificate of Appealability

Rule 11 of the Rules Governing § 2255 Proceedings requires the court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2255 Proceedings, Rule 11(a). The court may

issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," or "that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336, 338 (2003) (quotation marks omitted). Mr. King has not satisfied either standard with respect to Claims Two through Four, but Claim One is adequate to deserve encouragement to proceed further. *See id.* Accordingly, the court **WILL GRANT** a certificate of appealability on the following question: whether trial counsel provided ineffective assistance by failing to argue that his Fourth Amendment waiver was distinguishable from the waiver in *Samson* because Mr. King's waiver covered only warrantless searches and did not extend to suspicionless searches.

IV.  **CONCLUSION**

The court **WILL DENY** Mr. King's § 2255 motion. The court **WILL GRANT** a certificate of appealability on the following question: whether trial counsel provided ineffective assistance by failing to argue that his Fourth Amendment waiver was distinguishable from the waiver in *Samson* because Mr. King's waiver covered only warrantless searches and did not extend to suspicionless searches.

The court will enter a separate final order consistent with this opinion.

**DONE** and **ORDERED** this May 23, 2025.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE